**HAMMEL v. USF DUGAN, INC.**

[178 N.C. App. 344 (2006)]

FRANCIS P. HAMMEL, Plaintiff v. USF DUGAN, INC., Defendant

No. COA05-849

(Filed 5 July 2006)

**1. Damages and Remedies— personal injury instructions— loss of use—reference to "plaintiff's"—conceded and contested body parts**

The trial court did not err by instructing the jury that damages for personal injury include compensation for partial loss of use of certain of "plaintiff's" body parts and by including a contested brain injury in the listed body parts along with conceded orthopedic injuries because: (1) the pattern instruction would have included both the conceded and contested body parts in the same list; and (2) even if the court's inclusion of the word "plaintiff's" in the instruction was error, defendant cannot show that the jury was likely to be misled as to its duty given the numerous statements by the court to the jury properly describing the plaintiff's burden of proof and the jury's duty.

**2. Evidence— expert opinion testimony—lost future earning capacity**

The trial court did not err in a negligence case arising out of a collision between a vehicle and a truck by admitting allegedly inadmissible hearsay evidence regarding plaintiff's lost future earning capacity as a truck driver, because: (1) defendant failed to argue this assignment of error in its brief; (2) even if the assignment of error and argument adequately brought forward the issue, it has no merit since an expert's testimony of the facts that are the basis for his opinion is not hearsay when it is not offered for the truth of the matter; and (3) earning capacity is not determined solely on the present or past earnings of a plaintiff, and plaintiff was entitled to present evidence of his earning capacity as well as of his actual past earnings.

**3. Discovery— motion for additional independent medical examination—peremptory trial**

The trial court did not err in a negligence case arising out of a collision between a vehicle and a truck by denying defendant's motions for additional independent medical examination of plaintiff and for continuance of the trial, because: (1) the parties obtained a peremptory trial setting for this case, and Local Rule 4.4 states that peremptorily set cases will not be continued except

for extraordinary cause and only by the senior resident judge; (2) defendant moved for the additional Rule 35 examinations eleven weeks prior to trial, plaintiff had already been examined twice by defendant's neurologist, and defendant failed to discuss in its brief why another examination by a neurologist or by a forensic neuropsychiatrist was necessary; and (3) defendant's brief does not assert that it was unfairly surprised that plaintiff would call his treating doctors as witnesses, nor does he explain how an examination of plaintiff by its preferred doctor would overcome its concerns about possible disparagement of its Rhode Island witness.

Appeal by defendant from two orders entered 15 November 2004 by Judge Leon Stanback in the Superior Court in Wake County, an order entered 29 July 2004 by Judge Orlando F. Hudson, an order entered 21 September 2004 by Judge Donald W. Stephens, and denials by the court of defendant's motions to exclude evidence and to continue the trial date or to exclude testimony, and of pretrial motions *in limine*. Heard in the Court of Appeals 15 March 2006.

*Twiggs, Beskind, Strickland & Rabenau, P.A., by Howard F. Twiggs, Donald R. Strickland and Donald H. Beskind, for plaintiff.*

*Smith Moore, L.L.P., by James G. Exum, Jr., Allison O. Van Laningham and Travis W. Martin, for defendant.*

HUDSON, Judge.

On 19 July 2002, plaintiff Francis P. Hammel filed a complaint against defendant USF Dugan, Inc., ("defendant") and Allan Harvey Chappell, alleging negligence and seeking damages for injuries Hammel received as the result of a collision between his vehicle and defendant's truck. On 15 August 2002, defendant removed the case to the United States District Court for the Eastern District of North Carolina. On 8 October 2002, the case was remanded to the superior court in Wake County. The court entered a consent order on 26 July 2004 in which defendant admitted liability and plaintiff dismissed Chappell from the case. Following a trial, the jury awarded plaintiff $6,000,000 on 21 October 2004. Defendant moved for judgment notwithstanding the verdict ("JNOV") or, in the alternative, for a new trial, which motion the court denied. Defendant appeals. As discussed below, we affirm.

HAMMEL v. USF DUGAN, INC.

[178 N.C. App. 344 (2006)]

On 31 August 1999, defendant's truck, driven by Chappell, collided with plaintiff's vehicle. Plaintiff, a self-employed truck driver, alleged that he sustained orthopedic injuries and a closed head injury resulting in brain damage, and sought damages for pain and suffering, medical expenses, loss of enjoyment of life, and loss of income and future earning capacity. Pretrial, defendant moved for a mental and physical examination of plaintiff. Plaintiff had previously been examined twice by Dr. Edward Feldman, one of defendant's testifying expert witnesses. The court denied defendant's motion. At trial, defendant conceded plaintiff's orthopedic injuries, but contested his head injuries and brain damage, and any permanent consequences therefrom. Plaintiff's psychiatrist, Dr. Felicia Smith, his primary care physician, Dr. Frank Breslin, his speech pathologist, Robin Mirante, and his neurologist, Dr. Steve Massaquoi, each testified that plaintiff sustained a brain injury. Defendant offered testimony from Dr. Feldman, a neurologist, and from Dr. Robert Conder, a neuropsychologist. Plaintiff then called Patrick Logue, a neuropsychologist, in rebuttal.

Plaintiff also introduced evidence from Cynthia Wilhelm, Ph.D., a life care planner, and from Dr. Finley Lee, an economist, regarding the value of plaintiff's economic loss. Defendant objected to Dr. Lee's written report as being hearsay, since his analysis regarding plaintiff's future earning capacity was based on a report prepared by Maria Vargas, a vocational rehabilitation specialist who did not testify at trial. Ms. Vargas based her report on median wage data from the United States Bureau of Labor Statistics about truck drivers. The court overruled defendant's objection and admitted Dr. Lee's report. At the close of evidence, the court instructed the jury regarding damages as follows:

> Damages for personal injury also include fair compensation for the partial loss of the use of *Plaintiff's* brain, left hip, left leg, left knee, left elbow, right wrist, lower back, mid back and neck experienced by the Plaintiff as a proximate result of the negligence of the defendant. There's no fixed formula for placing a value on the partial loss of the use of *Plaintiff's* brain, left hip, left leg, left knee, left elbow, right wrist, lower back, mid back and neck. You must determine what is fair compensation by applying logic and common sense to the evidence.

(Emphasis supplied.) Counsel for defendant objected to this instruction on grounds that it suggested that plaintiff in fact had suffered a brain injury, a matter which was contested at trial. The court over-

ruled defendant's objection. After the jury returned its verdict awarding $6,000,000 to plaintiff, defendant moved for JNOV, which motion the court denied.

[1] Defendant first argues that the trial court erred by inserting the word "plaintiff's" at two points and in listing the brain along with other body parts in the pattern jury instruction given. We disagree.

On appeal,

this Court considers a jury charge contextually and in its entirety. *Jones v. Development Co.*, 16 N.C. App. 80, 86, 191 S.E.2d 435, 439, *cert. denied*, 282 N.C. 304, 192 S.E.2d 194 (1972). The charge will be held to be sufficient if "it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . ." *Id.* at 86-87, 191 S.E.2d at 440. The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. *Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917, *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988). "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." *Id.*

*Boykin v. Kim*, 174 N.C. App. 278, 286, 620 S.E.2d 707, 713 (2005).

Defendant contends that by including the contested brain injury in the list along with the conceded orthopedic injuries, the court "essentially removed a factually contested issue from the jury's consideration." The corresponding sentence in the pattern instruction reads:

Damages for personal injury also include fair compensation for the partial loss use of (list body parts affected) experienced by Plaintiff as a proximate result of the negligence of the defendant.

N.C.P.I.—Civil 810.12. "This Court has recognized that the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." *Caudill v. Smith*, 117 N.C. App. 64, 70, 450 S.E.2d 8, 13 (1994), *disc. review denied*, 339 N.C. 610, 454 S.E.2d 247 (1995). As in the instruction given here, the pattern instruction would have included both the conceded and contested body parts in the same list.

Defendant also contends that the court's insertion of the word "Plaintiff's" immediately before the list of body parts created what "amounted to a peremptory instruction." However, we look to the entirety of the jury instruction on damages. Here, the court made numerous statements to the jury properly describing the jury's duty in this case, including: "[t]he plaintiff has the burden of proving that the defendant's negligence was a proximate cause of the plaintiff's injuries and damages" and "[t]his means that the plaintiff must prove by the greater weight of the evidence the amount of actual damages proximately caused by the negligence of the defendant." Even were the court's inclusion of the word "Plaintiff's" in the instruction error, in light of these statements and numerous others, defendant cannot show that the jury was likely to be misled as to its duty. We overrule this assignment of error.

**[2]** Defendant next argues that trial court erred in admitting inadmissible hearsay evidence regarding plaintiff's lost future earning capacity. We disagree.

Defendant USF Dugan, Inc., assigns as error:

\*\*\*

(3) The trial court's denial of Defendant's Motion for Judgment Notwithstanding the Verdict or in the Alternative a New Trial on the ground that the errors cited therein, and set forth below in sub-paragraphs [below], in their cumulative effect necessitated the trial court's awarding of a new trial:

\*\*\*

(e) The admission through the testimony of Finley Lee, PhD., of the incompetent opinions of Maria Vargas, an occupational therapist who opined without foundation regarding the plaintiff's lost earning capacity;

Defendant thus argues error in the admission of Dr. Lee's testimony as one of a cumulative list of errors which would entitle it to JNOV or a new trial. Defendant has failed to argue this assignment of error in its brief, and thus it is abandoned. N.C. R. App. P. 28(b)(6). In its brief, defendant focuses solely on whether the trial testimony of Dr. Lee was inadmissable hearsay or inherently reliable. The argument says nothing about why these issues would entitle defendant to JNOV.

Even if the assignment of error and argument adequately brought forward the issue, it has no merit. Rule 703 governs the bases of opinion testimony by experts:

**HAMMEL v. USF DUGAN, INC.**

[178 N.C. App. 344 (2006)]

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

N.C. Gen. Stat. § 8C-1, Rule 703 (2003). When an expert witness testifies to the facts that are the basis for his or her opinion, "such testimony is not hearsay because it is not offered for the truth of the matter, but to show the basis of the opinion." *State v. Robinson*, 330 N.C. 1, 25, 409 S.E.2d 288, 302 (1991). Prior to the enactment of Rule 703, courts had adopted a policy allowing experts to base their opinions on information meeting an "inherently reliable" test, the standard defendant focuses on in his brief. *State v. Allen*, 322 N.C. 176, 184, 367 S.E.2d 626, 630 (1988). The current rule allows evidence where an expert relies on statistical information commonly used and accepted in his field. *State v. Demery*, 113 N.C. App. 58, 65, 437 S.E.2d 704, 709 (1993).

Here, the source of the statistics at issue is the U.S. Bureau of Labor Statistics, specifically the median income of all truck drivers. Lee testified that such median income statistics are a reasonably-relied-upon source on which an economist might base an opinion about earning capacity. In addition, plaintiff here was attempting to prove loss of earning capacity, not his actual earnings at the time of his injury. Earning capacity is not determined solely on the present or past earnings of a plaintiff. *See Johnson v. Lewis*, 251 N.C. 797, 802-3, 112 S.E.2d 512, 516 (1960) (approving the right of both minor children and housewives not currently working outside the home to receive damages for loss of earning capacity.) Plaintiff was entitled to present evidence of his earning capacity as well as of his actual past earnings. We overrule this assignment of error.

[3] Defendant also argues that the court erred in denying its motions for an additional independent medical examination of plaintiff and for continuance of the trial. We do not agree.

"Continuances are not favored and the party seeking [one] has the burden of showing sufficient grounds for it. . . . The question of whether or not to grant a continuance is a matter solely within the discretion of the trial court; absent a manifest abuse of discretion, this Court will not disturb the decision made below." *Atl. & E. Carolina Ry. Co. v. Wheatly Oil Co.*, 163 N.C. App. 748, 754, 594

S.E.2d 425, 429-30, *disc. review denied,* 358 N.C. 542, 599 S.E.2d 38 (2004) (quoting *Peace River Elec. Coop. v. Ward Transformer Co.,* 116 N.C. App. 493, 511, 449 S.E.2d 202, 215 (1994), *disc. review denied* 339 N.C. 739, 454 S.E.2d 655 (1995)).

Here, the parties obtained a peremptory trial setting for this case. Local Rule 4.4 states that "peremptorily set cases will not be continued, except for extraordinary cause and only by the Senior Resident Judge."

Defendant assigns error to denials of his motion for continuance by Donald W. Stephens, the Senior Resident Judge in Wake County, and by Leon Stanback, the trial judge. As reflected in Local Rule 4.4 quoted above, Judge Stanback had no authority to grant a continuance. Defendant contends that plaintiff disclosed the name of his rebuttal witness Dr. Patrick Logue, a neuropsychologist, so close to trial that it was unable to adequately prepare. We note that defendant did not disclose its own expert in neuropsychology, Dr. Conder, until 24 August 2004, and did not make him available for deposition by plaintiff until 1 September 2004. On 20 September 2004, less than three weeks after the deposition of Dr. Conder, plaintiff disclosed Dr. Logue as a possible rebuttal witness. Defendant deposed Dr. Logue two days later. On these facts, we conclude that Judge Stephens did not abuse his discretion in denying defendant's motion.

Defendant also contends that the court erred in denying defendant an opportunity for three additional medical examinations of plaintiff: by Dr. Feldman, a neurologist, Dr. Fozdar, a forensic neuropsychiatrist, and Dr. Conder, a neuropsychologist. "Rule 35 of our Rules of Civil Procedure provides in part that when the physical condition of a party is in controversy, the trial court may order the party to submit to a physical examination by a physician, but only for good cause shown and upon notice to all parties, including notice to the person to be examined." *Morin v. Sharp,* 144 N.C. App. 369, 374, 549 S.E.2d 871, 874 (2001). A trial court's order regarding matters of discovery is reviewed for an abuse of discretion. *Id.* Defendant moved for the additional Rule 35 examinations eleven weeks prior to trial. Plaintiff had already been examined twice by defendant's neurologist, and in its brief, defendant does not discuss why another examination by a neurologist or by a forensic neuropsychiatrist was necessary. Regarding the examination of plaintiff by Dr. Conder, defendant's brief describes the need as based on the likelihood that the jury would give greater weight to Dr. Condor's testimony if he had per-

sonally examined plaintiff rather than relying on plaintiff's medical records alone. The brief also raises the possibility that plaintiff would present evidence from its own neuropsychologist, Dr. Logue. However, Dr. Logue was not disclosed as a possible witness until after the Rule 35 hearing. At the hearing itself, defendant argued that the additional examinations were needed because plaintiff had disparaged the qualifications and impartiality of defendant's Rhode Island neurologist, and intended to present testimony from plaintiff's treating neurologist, psychiatrist and neuropsychologist. Defendant's brief does not assert that it was unfairly surprised that plaintiff would call his treating doctors as witnesses, nor does it explain how an examination of plaintiff by Dr. Conder would overcome its concerns about possible disparagement of its Rhode Island witness. The court did not abuse its discretion in denying defendant's motions. This assignment of error is without merit.

Affirmed.

Judges HUNTER and BRYANT concur.