CAROLINA FOREST ASSOCIATION, INC., PLAINTIFF v. HOWARD WHITE AND WIFE, JUDITH WHITE, DEFENDANTS

No. COA08-1445

(Filed 7 July 2009)

**1. Appeal and Error— appellate rules violations—dismissal not necessitated**

A *pro se* appeal was not dismissed for appellate rules violations, even though it satisfied the *Dogwood* criteria for dismissal, where the fundamental principle of *Dogwood* did not necessitate dismissal.

**2. Rules of Civil Procedure— Rule 41—two dismissal rule— no motion on that basis**

It could not be concluded that plaintiff's complaint should have been dismissed under N.C.G.S. § 1A-1, Rule 41(a)(1) where there was the possibility of a "two dismissal" issue but there was also no indication that the *pro se* defendants made a dismissal motion predicated on that basis and in the absence of relevant material from the record.

**3. Venue— motion to change denied—actions in two counties**

The trial court did not err by denying defendants' motion for a change of venue from Mecklenburg County to Montgomery County, where a related action was pending, where the *pro se* defendants (who were retired and spent time in both places) did not explicitly deny that they were residents of Mecklenburg County, and did not offer contentions that would support a

1

CAROLINA FOREST ASS'N v. WHITE

[198 N.C. App. 1 (2009)]

change of venue for the convenience of the parties and witnesses or because they could not obtain a fair and impartial trial in the county where the action was pending.

**4. Trials— continuance denied—no proper motion—good cause not shown**

The trial court did not err by not continuing a trial where defendants did not make a proper request for a continuance and did not show good cause for the continuance.

**5. Trials— request for jury trial—related action immaterial**

The trial court did not err by denying defendants' request for a jury trial where defendants did not appear for trial in Mecklenburg County and did not make a proper demand for a jury trial in Mecklenburg County. The Mecklenburg County action is a new proceeding rather than a continuation of previous Montgomery County proceedings, so that the previous ruling in Montgomery County denying plaintiff's request for summary judgment has no bearing.

**6. Civil Procedure— motion for new trial denied—not timely—sufficient grounds not stated**

Defendants were not entitled to a new trial where they did not file a timely motion for a new trial, advance any of the statutory grounds for a new trial, or otherwise establish adequate grounds for appellate relief.

Judge STROUD dissenting.

Appeal by Defendants from judgment entered 30 September 2008 by Judge Hugh B. Campbell in Mecklenburg County District Court. Heard in the Court of Appeals 6 May 2009.

*Katherine Freeman, and The Olsen Law Offices, by John Olsen, for Plaintiff.*

*Howard Ray White and Judith White, for Defendants, pro se.*

ERVIN, Judge.

Howard White and his wife, Judith White (Defendants), appeal from a judgment entered 30 September 2008 providing that Carolina Forest Association, Inc. (Plaintiff), have and recover from Defendants the principal sum of $9,934.50; "[p]re-judgment interest at the rate of 8% per annum from March 1, 2008 to today;" "[p]ost-

**CAROLINA FOREST ASS'N v. WHITE**

[198 N.C. App. 1 (2009)]

judgment interest at the rate for [j]udgments from today;" and "[t]he costs of this action." After careful consideration of Defendants' arguments, we decline to disturb the trial court's judgment.

Plaintiff is an association of property owners in Carolina Forest, a community located near Lake Tillery in Montgomery County, North Carolina. As is typical of many property owners associations (POAs), Plaintiff has responsibility for maintaining the roads and common areas within Carolina Forest. According to Defendants, Carolina Forest was initially developed in 1970 and contains approximately 900 lots designated for conventional houses. Since 1970, houses have been built on approximately 70 lake-front lots and approximately 70 interior lots. Approximately 760 lots in Carolina Forest have yet to be build upon.

Defendants contend that Plaintiff's contract to provide amenities and road maintenance expired in 1990. Since that time, Plaintiff has operated under the terms of an implied contract. Under the fee arrangement which Plaintiff currently attempts to enforce, vacant lot owners are charged 30 percent less than the owners of lots upon which houses have been constructed. Defendants contend that a high percentage of the fees collected by Plaintiff benefit the owners with lots upon which houses have been built even though the owners of such lots represent a small minority of the overall body of property owners. Defendants' objections to this perceived inequity eventually resulted in the present litigation.

Defendants own five vacant lots and one lake-front lot in Carolina Forest. Defendants have built a house on their lake-front lot. Defendants have disputed the fairness of the POA fees assessed by Plaintiff since 2003 and have attempted to negotiate the payment of a full fee for their lake-front lot and a fee based on the cost of road maintenance and other select items for their vacant lots. Plaintiff has declined to accept Defendants' bifurcated fee proposal, so Defendants have declined to pay their POA fees.

On 25 March 2004, Plaintiff filed a complaint in File No. 04 CVD 168 against Defendants in the District Court of Montgomery County seeking the entry of a judgment in the amount of Defendant's unpaid POA fees. In its complaint, Plaintiff alleged that Plaintiff was "charged with the responsibility of budgeting sufficient funds for maintaining the roads, common areas, and recreational facilities and to determine dues and assessments per lot to apportion these expenses among the several property owners of Carolina Forest[.]"

Plaintiff alleged that Defendants owed $1,336.00 in dues and assessments as of 31 December 2003. The record does not disclose why Montgomery County File No. 04 CVD 168 was apparently not resolved on the merits.

On 14 March 2006, Plaintiff filed a second complaint in File No. 06 CVD 153 in the District Court of Montgomery County alleging that, as of 2 June 2005, Defendants owed $3,809.00 in unpaid dues and assessments. In their response to the complaint filed in Montgomery Country File No. 06 CVD 153, Defendants alleged that "Plaintiff has acted in bad faith toward Carolina Forest property owners and [has] not complied in good faith with either the North Carolina Planned Community Act or other laws pertaining to implied contracts." Defendants also claimed that owners of undeveloped lots in Carolina Forest are "gravely mistreated" and receive "no services in return for about 75 percent of the money paid . . . for each undeveloped lot[.]" Defendants requested the court to "instruct Plaintiff to reconstruct the spending plan for Carolina Forest so that spending beneficial to owners of undeveloped lots is in proportion to the dues collected from them[.]"

On 17 August 2006, Plaintiff filed a motion for summary judgment in Montgomery County File No. 06 CVD 153. In seeking summary judgment, Plaintiff relied upon the trial court's decision in Montgomery County File No. 98 CVS 106. In that case, the trial court entered an order requiring several property owners in Carolina Forest to pay various sums to Plaintiff on the basis of a conclusion that there was an implied contract between the POA and the property owners. In addition, Plaintiff cited the decision of this Court in *Miles v. Carolina Forest Ass'n*, 167 N.C. App. 28, 604 S.E.2d 327 (2004), which upheld the trial court's ruling in Montgomery County File No. 98 CVS 106 on the basis that there was a contract implied in fact between the parties and that there was no dispute about the value of the services provided by Plaintiff to the property owners before the Court in that case. Defendants responded to Plaintiff's motion by arguing that "Defendants' unique situation sets them apart from the issues decided in *Miles*" because Defendants owned five lots and the owners in *Miles* only owned single lots.

On 28 September 2006, the trial court entered an order denying Plaintiff's motion for summary judgment, stating that, "while an implied contract exists," there was "a genuine issue of material fact as to the terms and conditions of said contract and the amount which

may be owed to Plaintiff pursuant to said implied contract[.]" As a result, the court concluded that the issues between the parties in Montgomery County File No. 06 CVD 153 should be heard and decided before a properly-selected jury. On 26 October 2007, Plaintiff voluntarily dismissed its complaint against Defendants in Montgomery County File No. 06 CVD 153 without prejudice.

On 23 January 2008, Plaintiff filed a complaint against Defendants in File No. 08 CVD 1498 in the District Court of Mecklenburg County alleging that Defendants owed $7,422.00, plus the amount of assessments for 2008 and interest at 8% from and after 1 June 2007 due to Defendants' breach of an implied contract between the parties. Plaintiff also alleged, in the alternative, that Defendants owed the foregoing amount based on either *quantum meruit* and unjust enrichment grounds or on the basis of North Carolina's Planned Community Act, which has been codified at N.C. Gen. Stat. § 47F-1-101, *et seq.*

On 14 February 2008, Defendants responded by stating that "Defendants were surprised and mystified as they were handed a Civil Summons by [a] Mecklenburg County deputy . . . because the subject summons concerned litigation that rightfully belongs in Montgomery County District Court, where it has been in progress for the past four years." Defendants argued that the District Court of Mecklenburg County did not have "jurisdiction over the parties" and denied the validity of Plaintiff's claims under the doctrines of implied contract, *quantum meruit* and unjust enrichment, and under the North Carolina Planned Community Act. On 10 March 2008, Defendants filed a motion for change of venue seeking to have "Mecklenburg case 08 [CVD] 1498 . . . dismissed and Plaintiff . . . directed to litigate its dispute with Defendants in Montgomery County as a continuation of Montgomery case 06-CvD-153."

On 8 September 2008, Plaintiff filed a summary judgment motion Plaintiff's summary judgment motion was scheduled for hearing on 15 September 2008. At the call of the calendar on that day, Defendants were instructed to return at 2:00 p.m. on 18 September 2008, at which time a bench trial was scheduled to commence. The trial court also denied Defendants' motion for change of venue on 8 September 2008. According to their brief, Defendants subsequently telephoned the office of the Clerk of Superior Court of Mecklenburg County and stated that they could not attend the trial because they were required to attend a scheduled business meeting.

On 1 October 2008, the trial court entered a judgment against Defendants. After noting that "Defendants failed to appear," the trial court concluded that there was an implied contract between the parties and that Defendants' failure to pay $9,934.50 constituted a breach of that implied agreement. As a result, the trial court entered a judgment ordering Defendants to pay $9,934.50, plus pre-judgment and post-judgment interest, and the costs.

On 13 October 2008, Defendants filed notice of appeal, disputing the court's order in its entirety, including its "denial" of Defendants' claimed right to trial by jury. Defendants argued that they had proven the existence of a genuine issue of material fact in Montgomery County File No. 06 CVD 153 and were, for that reason, entitled to a trial by jury. On 9 March 2009, Plaintiff filed a motion seeking the dismissal of Defendants' appeal and the imposition of sanctions.

## Motion to Dismiss Appeal and for Sanctions

[1] We first address Plaintiff's motion to dismiss Defendants' appeal and for sanctions. At a minimum, we agree with Plaintiff that Defendants' numerous violations of the Rules of Appellate Procedure, including important omissions from the record on appeal and apparent failures to respect Plaintiff's procedural rights, make Defendants' arguments very difficult to evaluate.[1] However, we dismiss appeals "only in the most egregious instances of non-jurisdictional default[.]" *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 366 (2008) (citation omitted); *see also* 5 Am. Jur. 2d Appellate Review § 804, at 540 (2007) (stating that "it is preferred that an appellate court address the merits of an appeal whenever possible" and further, that "a party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal"). Although Defendants' appeal satisfies *Dogwood's* criteria for dismissal, we believe the fundamental principle of *Dogwood*, to "promote public confidence in the administration of justice in our appellate courts[,]" does not necessi-

---

1. Among the serious violations of the Rules of Appellate Procedure committed by Defendants are the following: Defendants did not properly preserve their objections at trial in violation of N.C.R. App. P. 10(b)(1). Defendants did not properly serve the proposed record on appeal, settle the record on appeal, or file and serve the record on appeal in violation of N.C.R. App. P. 11 and 12. In addition, Defendants' notice of appeal contained six pages of argument on the merits of the underlying case in violation of N.C.R. App. P. 3(d). Finally, Defendants' assignments of error do not comply with N.C.R. App. P. 10(c)(1) because they do not contain any specific record or transcript references. As a result of the seriousness of these rule violations, Defendants' appeal is certainly subject to dismissal pursuant to N.C.R. App. P. 25(b).

tate dismissal in the instant case. We will attempt to evaluate the merits given Defendants' vigorously-stated contentions that they have not received fair treatment in accordance with North Carolina law.

After careful study of the record and Defendants' brief, we can discern four possible issues in this appeal: (1) whether the trial court erred by denying Defendants' motion for a change of venue; (2) whether the trial court erred by refusing to continue the trial; (3) whether the trial court erred by failing to grant Defendants' request for a trial by jury; and (4) whether this court should grant Defendants request for a trial "*de novo.*"[2] After careful consideration of the record and briefs, we conclude that the trial court did not commit prejudicial error in the proceedings leading up to the entry of judgment.[3]

---

2. Defendants also appear to argue that the trial court erroneously decided this case on the merits. However, as best we are able to understand Defendants' argument, they merely claim that the trial court failed to take various items of "evidence" into consideration or believed testimony that Defendants contend is inaccurate or incomplete. Since statements made in filings by the Defendants in various trial court proceedings or on appeal were not made under oath and subject to cross examination at the trial conducted before the trial court, those statements do not constitute evidence which the trial court was required to consider. *See Horton v. New South Ins. Co.*, 122 N.C. App. 265, 268, 468 S.E.2d 856, 857 (1996) (standing for the proposition that an appellant court will not consider evidence on appeal that was not submitted at trial, and declining to "take judicial notice of a document outside the record when no effort has been made to include it"). Furthermore, the fact that Defendants contest the credibility, accuracy, or completeness of Plaintiff's evidence is not a valid basis for providing relief on appeal given this Court's lack of authority to look behind properly-supported findings by the trial court and the absence of any specific challenge directed to any of the trial court's findings of fact or conclusions of law. *Freeman v. Bennett*, 249 N.C. 180, 183, 105 S.E.2d 809, 810 (1958) (stating that, "[w]hen a question of fact is presented for decision, the court's findings are conclusive on appeal if supported by competent evidence[;] [m]oreover, it is presumed that findings of fact are supported, hence conclusive on appeal, unless challenged by appropriate exceptions" (citations omitted)). As a result, we will not discuss this facet of Defendants' argument in any detail in this opinion.

3. A consistent theme that runs throughout the argumentative documents that Defendants included in the record on appeal and throughout Defendants' brief is the assertion that the parties were involved in a single case that started in Montgomery County and ended in Mecklenburg County. Such thinking clearly underlies Defendants' repeated contentions that the trial court in this case erroneously failed to honor decisions made by the presiding judge in Montgomery County. This view of the situation is, however, fundamentally mistaken. Instead of a single case, the materials in the record reveal the existence of three separate and distinct cases involving the same parties and the same basic issues. For that reason, filings made and decisions rendered in the two Montgomery County cases are generally irrelevant to the proper disposition of the Mecklenburg County case, which has to be evaluated independently.

### "Two Dismissal" Rule

**[2]** As an initial matter, we address *sua sponte* an issue which Defendants have not raised on appeal: whether the "two dismissal" rule stemming from N.C. Gen. Stat. § 1A-1, Rule 41 operates to bar Plaintiff's claim against Defendants.

N.C. Gen. Stat. § 1A-1, Rule 41 states:

Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this or any other state or of the United States, an action based on or including the same claim. If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal unless a stipulation filed under (ii) of this subsection shall specify a shorter time.

N.C. Gen. Stat. § 1A-1, Rule 41(a)(1). "[I]n enacting the two dismissal provision of Rule 41(a)(1), the legislature intended that a second dismissal of an action asserting claims based upon the same transaction or occurrence as a previously dismissed action would operate as an adjudication on the merits and bar a third action based upon the same set of facts." *Richardson v. McCracken Enters.*, 126 N.C. App. 506, 509, 485 S.E.2d 844, 846 (1997). The "two dismissal" provision of N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) has two components: (1) "the plaintiff must have filed notices to dismiss under Rule 41(a)(1)," *Centura Bank v. Winters*, 159 N.C. App. 456, 459, 583 S.E.2d 723, 724 (2003), and (2) "the second suit must have been based on or including the same claim" as the first suit. *City of Raleigh v. College Campus Apartments, Inc.*, 94 N.C. App. 280, 282, 380 S.E.2d 163, 165 (1989) (internal quotations omitted). After careful consideration, we conclude that the "two dismissal" rule does not necessitate granting of an award of appellate relief in this instance.

In *North Carolina R. Co. v. Ferguson Builders Supply, Inc.*, 103 N.C. App. 768, 407 S.E.2d 296 (1991), this Court "noted that the complaint in this case . . . [does not] disclose the fact that both of [the former] actions were voluntarily dismissed" and that, in order for the trial court to have properly concluded that a party's action is barred by the "two dismissal" rule, the trial court must necessarily "consider

both of the complaints filed in the prior actions and the notices of dismissal." *Ferguson Builders Supply, Inc.*, 103 N.C. App. at 771, 407 S.E.2d at 298. The trial court in this case does not appear to have ever considered whether Mecklenburg County File No. 08 CVD 1498 should have been dismissed pursuant to the "two dismissal" rule because Defendants failed to challenge the validity of Plaintiff's complaint on this basis in the court below. In view of the fact that Defendants do not appear to have raised this issue before the trial court and have not included an assignment of error premised on the application of the "two dismissal" rule on appeal, it is clear that Defendants have not preserved this issue for appellate review. N.C.R. App. P. 10. In addition, while the record contains the notice of dismissal filed in Montgomery County File No. 06 CVD 153, it does not contain a similar document relating to Montgomery County File No. 04 CVD 168.[4] As a result, since both the trial court and this Court must necessarily "consider both of the complaints filed in the prior actions and the notices of dismissal" in order to determine whether the "two dismissal" rule set out in N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) applies in any particular instance, *Ferguson Builders Supply, Inc.*, 103 N.C. App. at 771, 407 S.E.2d at 298, we are simply unable to say that the "two dismissal" rule would operate to bar Plaintiff from proceeding in this case. Thus, although we recognize the possibility that there is a "two dismissal" issue in this case, we cannot conclude, given the absence of any indication that Defendants made a dismissal motion predicated on the "two dismissal" rule in the trial court and in the absence of relevant material from the record before us, that Plaintiff's complaint should have been dismissed under N.C. Gen. Stat. § 1A-1, Rule 41(a)(1).

## Venue

**[3]** Defendants first contend that the trial court erred by denying their motion for change of venue. We disagree.

According to N.C. Gen. Stat. § 1-82, a civil "action must be tried in the county in which the plaintiffs or the defendants, or any of them,

---

4. Defendants state on a number of occasions in the record and their brief that Plaintiff's complaint in Montgomery County File No. 04 CVD 168 was "withdrawn" or that it "went away." However, we are unwilling to accept these statements as evidence that Plaintiff took a voluntary dismissal of its first Montgomery County complaint without prejudice pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(a) because Defendants did not properly settle the record on appeal with Plaintiff, precluding us from accepting their statements as stipulations by the parties, and because it is not clear to us what Defendants mean by "withdrawn" or that the first Montgomery County complaint "went away."

reside at its commencement . . . ." As a practical matter, the plaintiff generally gets to make an initial choice as to the venue in which a particular civil action should be litigated. However, a number of statutory provisions authorize efforts to seek a change of venue. First, according to N.C. Gen. Stat. § 1-83:

> If the county designated . . . is not the proper one, the action may, however, be tried therein, unless the defendant, before the time of answering expires, demands in writing that the trial be conducted in the proper county, and the place of trial is thereupon changed by consent of parties, or by order of the court. The court may change the place of trial in the following cases:
>
> (1) When the county designated for that purpose is not the proper one.
>
> (2) When the convenience of witnesses and the ends of justice would be promoted by the change.
>
> (3) When the judge has, at any time, been interested as party or counsel.

N.C. Gen. Stat. § 1-83. A motion challenging an "[i]mproper venue or division" should be asserted pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(3) and must be advanced within the time limits specified in N.C. Gen. Stat. § 1A-1, Rule 12. "It is well settled that a court's decision upon a motion for a change of venue pursuant to G.S. 1-83(2) will not be disturbed absent a showing of a manifest abuse of discretion." *Smith v. Mariner*, 77 N.C. App. 589, 591, 335 S.E.2d 530, 531 (1985). However, "when the venue where the action was filed is not the proper one, [and N.C. Gen. Stat. § 1-83(1) is applicable], the trial court does not have discretion, but must upon a timely motion and upon appropriate findings transfer the case to the proper venue." *Cheek v. Higgins*, 76 N.C. App. 151, 153, 331 S.E.2d 712, 714 (1985).

In addition, N.C. Gen. Stat. § 1-84, provides for a change of venue in another set of circumstances:

> In all civil actions in the superior and district courts, when it is suggested on oath or affirmation on behalf of the plaintiff or defendant, that there are probable grounds to believe that a fair and impartial trial cannot be obtained in the county in which the action is pending, the judge may order a copy of the record of the action removed for trial to any adjacent county, if he is of the opinion that a fair trial cannot be had in said county, after

hearing all the testimony offered on either side by oral evidence or affidavits.

N.C. Gen. Stat. § 1-84. "A motion for change of venue [pursuant to N.C. Gen. Stat. § 1-84] . . . [and] on the ground that a fair and impartial trial cannot be obtained in the county in which the action is pending, is addressed to the sound discretion of the trial court." *Everett v. Robersonville*, 8 N.C. App. 219, 222, 174 S.E.2d 116, 118 (1970) (citations omitted).

The Defendants have not specified the identity of the statutory provision or provisions under which they sought a change of venue from Mecklenburg County to Montgomery County. The Defendants' change of venue motion simply states that Defendants move for change of venue pursuant to "Rule 1A of the North Carolina Rules of Civil Procedure" and that Mecklenburg is not the "proper" venue.[5] For that reason, it is not entirely clear whether Defendants are contending that venue in Mecklenburg County was improper *ab initio* or whether Defendants are contending that the trial court should have changed the venue for this proceeding from Mecklenburg County to Montgomery County for some other reason, such as the convenience of the witnesses. As a result, we will attempt to address both grounds on which the trial court might have evaluated Defendants' change of venue motion.

We first address whether the filing of this action in Mecklenburg County contravened the venue rules set out in N.C. Gen. Stat. § 1-82. Plaintiff alleged in its complaint that Defendants were residents of Mecklenburg County. Defendants never explicitly denied this allegation in their answer. On the contrary, Defendants stated in their answer that they "hold residences in both Mecklenburg County and Montgomery County" and are "retired and spend time at both their Mecklenburg County residence and their Montgomery County residence." In addition, during a colloquy between Defendants and the trial court, Defendants did not deny that they lived in Mecklenburg County and simply argued that "[t]he same issue that is before the court today has been filed and argued in Montgomery County for four years." When the trial court directly stated, "But your residence is

---

5. Although Defendants filed their answer on or about 14 February 2008 and their change of venue motion on or about 10 March 2008, their answer did argue that this case should be heard in Montgomery County rather than Mecklenburg County. As a result, we believe that Defendants did assert a request that the venue for this case be changed from Mecklenburg County to Montgomery County in their answer when it is liberally construed and we will, for that reason, address this issue on the merits.

here in Mecklenburg County," Defendants responded, "Most of the time we're here." "Definitions of 'residence' include 'a place of abode for more than a temporary period of time' and 'a permanent and established home' and the definitions range between these two extremes[.]" *Great American Ins. Co. v. Allstate Ins. Co.*, 78 N.C. App. 653, 656, 338 S.E.2d 145, 147 (1986) (citation omitted). As a result, the information that would have been available to the trial court at the time that it ruled on Defendants' motion for change of venue tends to show that Defendants had a "permanent and established" home in Mecklenburg County where they lived most of the time.[6] Thus, the trial court had ample justification for finding venue in Mecklenburg County to have been proper.

Secondly, we address the issue of whether the trial court abused its discretion by denying Defendants' motion for change of venue pursuant to N.C. Gen. Stat. § 1-83(2) or N.C. Gen. Stat. § 1-84. On appeal, Defendants argue that the trial court erroneously denied their motion for change of venue because the court "ignor[ed] plaintiff's obvious manipulation of the courts as it moved its litigation against defendants out of Montgomery County and into Mecklenburg County in a clear attempt to circumvent exposure to a trial by jury[.]" Even if we were to accept this argument, it would not support allowance of a change of venue motion lodged pursuant to N.C. Gen. Stat. § 1-83(2), which focuses on convenience of the parties and witnesses, or N.C. Gen. Stat. § 1-84, which requires proof that the moving party cannot obtain a fair and impartial trial in the county where the action is currently pending. As a result, the trial court did not abuse its discretion by denying Defendants' motion for change of venue pursuant to N.C. Gen. Stat. § 1-83(2) or N.C. Gen. Stat. § 1-84.

### Continuance

[4] We next address Defendants' contention that the trial court erred by not continuing the trial. After careful consideration of the parties' arguments, we conclude that the trial court did not err in proceeding to conduct a trial on the merits in this case at the 15 September 2008 session of the Mecklenburg County District Court.

---

6. In their brief, Defendants claimed to have been legal residents of Montgomery County as of the date of their attempt to obtain a change of venue and stated that "many records had been moved and the remainder were being moved to effect that new residence status." Although the Defendants' assertions do not constitute evidence, their statement does suggest that they were residents of Mecklenburg County at the time that the complaint was filed, which is the relevant date for purposes of N.C. Gen. Stat. § 1-82.

N.C. Gen. Stat. § 1A-1, Rule 40(b) states that:

> No continuance shall be granted except upon application to the court. A continuance may be granted only for good cause shown and upon such terms and conditions as justice may require. Good cause for granting a continuance shall include those instances when a party to the proceeding, a witness, or counsel of record has an obligation of service to the State of North Carolina, including service as a member of the General Assembly or the Rules Review Commission.

N.C. Gen. Stat. § 1A-1, Rule 40(b); *see also Trivette v. Trivette*, 162 N.C. App. 55, 63, 590 S.E.2d 298, 305 (2004). "Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it." *Shankle v. Shankle*, 289 N.C. 473, 482, 223 S.E.2d 380, 386 (1976). "The chief consideration is whether granting or denying a continuance will further substantial justice." *Doby v. Lowder*, 72 N.C. App. 22, 24, 324 S.E.2d 26, 28 (1984) (citing *Shankle*, 289 N.C. at 483, 223 S.E.2d at 386). "[G]ranting or refusing the continuance of a cause is a matter which rests in the discretion of the trial court and in the absence of gross abuse is not subject to review on appeal." *Sykes v. Blakey*, 215 N.C. 61, 63, 200 S.E. 910, 911 (1939) (citing *State v. Sauls*, 190 N.C. 810, 130 S.E. 848 (1925)); *see also O'Brien v. O'Brien*, 266 N.C. 502, 146 S.E.2d 500 (1966) (stating that a motion for continuance is addressed to the sound discretion of the trial court and its ruling is not reviewable absent a manifest abuse of discretion).

As a preliminary matter, it is, at best, doubtful that Defendants actually applied to the trial court for a continuance. At a hearing on 15 September 2008, the following colloquy transpired between the trial court and Defendant Howard White[7]:

> Court: Yeah, but I don't want to hear about the merits of it right now, Mr. White, what I'm trying to find out is what, what about this motion to continue and I'm not trying to decide your case, I'm trying to decide whether we're going to hear the case or not. What's the reason we can't hear the case?

---

7. As a non-lawyer, Defendant Howard White was only entitled to represent himself and was not entitled to appear on behalf of Defendant Judith White. Thus, there is no indication that Defendant Judith White ever properly sought a continuance of the trial of this case.

White: Well, we didn't come prepared. We've been out of state. We didn't come prepared to argue the summary judgment.

Court: That's not a good excuse, that you didn't come prepared.

White: The summary judgment was denied in Montgomery County and I didn't bring my, all my papers with me.

Court: Oh, well I'm not going to do it right this minute, I'll give you a chance to get your papers. I just was trying to find out why you need a continuance and so far all you've told me is you're not prepared and you don't have your papers and I'm not going to hear it today so that wouldn't give you a problem about getting your papers.

At the same hearing, the trial court asked the parties whether they were free "Thursday morning[,]" to which Plaintiff's counsel responded that he was required to be in court in Cabarrus County at that time. Defendant Howard White made no response. After expressing a preference that everyone be present for the trial, the trial court asked, "how about Thursday afternoon? That ought to give you plenty of time to get whatever papers you need, Mr. White." In response, Defendant Howard White stated, "Your Honor, we had requested the jury trial on this and you're talking like we're not going to get a jury trial." Defendant Howard White did not, at any point during the hearing, state that he had a scheduling conflict on Thursday afternoon. Thereafter, despite the fact that the trial court indicated that the parties should appear "at two o'clock on Thursday," neither Defendant took any additional formal steps to have the trial continued from the designated date and time.

In their brief to this Court, Defendants state that:

It turned out that the date the Court had selected . . . conflicted with a business meeting my wife had scheduled with people from New York State. I tried repeatedly to call the court to notify it of our scheduling conflict, but never received a reply to my telephone call until the hearing had begun. The Court representative on the telephone informed me that the Judge would [proceed]. . . . It seemed reasonable to expect that we Defendants would not be denied our right to a jury trial[.] . . .

According to the trial transcript, Defendant Howard White called the office of the Clerk of Superior Court of Mecklenburg County "in the middle of [the] trial." At that point, the courtroom clerk interrupted

the proceedings and stated that "[w]e have the other party on the telephone[.] . . . [H]e's protesting, apparently, . . . the proceeding." According to the courtroom clerk, Howard White argued that he "was supposed to get a jury." Other than this transcript reference, there is no indication in the official record of the proceedings in the trial court that either Defendant ever protested the trial court's decision to proceed to trial at the 15 September 2008 session of the Mecklenburg County District Court.

Defendants' challenge to the trial court's decision to proceed to trial during the 15 September 2008 session fails for two different reasons. First, a phone call to the court after the trial has been calendared does not constitution an application for a continuance, *see Trivette*, 162 N.C. App. at 63, 590 S.E.2d at 305 (holding that "[a] telephone call, absent extenuating circumstances, does not qualify as application to the court"). Secondly, even if one were to treat the phone calls described in Defendants' brief as an application for a continuance, a business meeting with out-of-state "people" does not establish the requisite "good cause." *See Wachovia Bank & Trust Co., N.A. v. Templeton Oldsmobile-Cadillac-Pontiac, Inc.*, 109 N.C. App. 352, 357, 427 S.E.2d 629, 631 (1993) (holding that the fact that a party was not prepared for trial did not entitle the party to a continuance); *Daniel Boone Complex, Inc. v. Furst*, 57 N.C. App. 282, 284, 291 S.E.2d 296, 298 (1982) (holding that the trial court did not abuse its discretion by denying the plaintiff's motion for continuance predicated on the claim that plaintiff's counsel had not had adequate time to prepare for trial and had experienced difficulties in obtaining the presence of a witness); *Tripp v. Pate*, 49 N.C. App. 329, 331, 271 S.E.2d 407, 408 (1980) (holding that the trial court did not abuse its discretion by denying the plaintiff's motion for continuance predicated on the claim "that her attorney had been unable to adequately prepare for trial due to a schedule conflict" given that plaintiff's counsel had had "over a year to prepare her case for trial").

"[A] party to a lawsuit must give [the suit] the attention a prudent man gives to his important business." *Chris v. Hill*, 45 N.C. App. 287, 290, 262 S.E.2d 716, 718, *disc. review denied*, 300 N.C. 371, 267 S.E.2d 674 (1980) (stating that the "[d]efendants in this case received adequate notice, and the evidence supports the court's finding that their failure to appear for trial was not excusable"). We conclude, therefore, that Defendants' application to the court for a continuance, via telephone, did not constitute a proper request for a continuance and that, wholly aside from this problem, Defendants did not show "good

cause" that the trial court should grant any motion for a continuance Defendants actually made. As a result, the trial court did not err by proceeding to the trial of this case at the 15 September 2008 session of the Mecklenburg County District Court.

## Trial by Jury

**[5]** We next address Defendants' contention that the trial court erred by denying Defendants' request for a trial by jury. We conclude that this argument has no merit given the facts revealed by the present record.

Article I, Section 25 of the North Carolina Constitution provides that, "in all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and shall remain sacred and inviolable." N.C. Const. art. I, § 25. "A party may waive his right to jury trial by (1) failing to appear at the trial, (2) by written consent filed with the clerk, (3) by oral consent entered in the minutes of the court, (4) by failing to demand a jury trial pursuant to G.S. 1A-1, Rule 38(b)." *Frissell v. Frissell,* 47 N.C. App. 149, 152, 266 S.E.2d 866, 868; *see also North Carolina State Bar v. Du Mont,* 52 N.C. App. 1, 17, 277 S.E.2d 827, 836 (1981) (stating that "[f]ailure of a party to serve demand for trial by jury as required by the Rules of Civil Procedure constitutes a waiver of trial by jury") (citing N.C. Gen. Stat. 1A-1, Rule 38(d)).

N.C. Gen. Stat. § 1A-1, Rule 38, specifies the method by which a party is required to assert his or her right to trial by jury in civil litigation:

> (b) Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be made in the pleading of the party or endorsed on the pleading.
>
> . . .
>
> (d) Except in actions wherein jury trial cannot be waived, the failure of a party to serve a demand as required by this rule and file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury as herein provided may not be withdrawn without the consent of the parties who have pleaded or otherwise appear in the action.

N.C. Gen. Stat. § 1A-1, Rule 38. According to N.C. Gen. Stat. § 1A-1, Rule 39, "[i]ssues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a trial by jury in an action in which such a demand might have been made of right[.]"

Here, Defendants waived their right to a trial by jury in two ways. First, Defendants arguably failed to serve "a demand [for a trial by jury] in writing at any time after commencement of the action and not later than 10 days after the service of the last pleading." N.C. Gen. Stat. § 1A-1, Rule 38(b). Although Defendants made repeated references to their desire to have a jury trial in Montgomery County File No. 06 CVD 153, there is no clear and unequivocal statement in the answer that Defendants filed in Mecklenburg County File No. 08 CVD 1498 that they wished a jury trial in that proceeding. Secondly, and more importantly, Defendants failed to appear at trial. The fact that Defendants had persuaded the court in Montgomery County File No. 06 CVD 153 to deny summary judgment and set the matter for a jury trial is legally irrelevant to the issue of whether Defendants properly demanded a jury trial in Mecklenburg County File No. 08 CVD 1498. As we have previously noted, Mecklenburg County File No. 08 CVD 1498 is a new proceeding rather than a continuation of previous Montgomery County proceedings, so that the previous ruling in Montgomery County File No. 06 CVD 153 denying Plaintiff's request for summary judgment has no bearing on the proper resolution of this issue. As a result, the Defendants' argument that they were improperly deprived of their right to a jury trial is without merit, the trial court properly heard this case on the merits sitting without a jury, and the associated assignments of error are overruled.

## New Trial

[6] Finally, we address Defendants' argument that this Court should grant Defendants a new trial. After careful consideration of Defendants' arguments, we are not able to ascertain any lawful basis for disturbing the trial court's judgment.

N.C. Gen. Stat. § 1A-1, Rule 59(a) provides that, "[o]n a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." A new trial may be granted on all or part of the issues for any of the following reasons:

(1) Any irregularity by which any party was prevented from having a fair trial;

(2) Misconduct of the jury or prevailing party;

(3) Accident or surprise which ordinary prudence could not have guarded against;

(4) Newly discovered evidence material for the party making the motion which he could not, with reasonable diligence, have discovered and produced at the trial;

(5) Manifest disregard by the jury of the instructions of the court;

(6) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;

(7) Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law;

(8) Error in law occurring at the trial and objected to by the party making the motion, or

(9) Any other reason heretofore recognized as grounds for new trial.

N.C. Gen. Stat. § 1A-1, Rule 59(a). "A motion for a new trial shall be served not later than 10 days after entry of the judgment." N.C. Gen. Stat. § 1A-1, Rule 59(b); *see also Trivette v. Trivette*, 162 N.C. App. 55, 62, 590 S.E.2d 298, 303 (2004) (holding that, "[s]ince defendant's Rule 59 motion was untimely, the trial court properly denied it").

The trial court entered judgment against Defendants on 1 October 2009. Defendants have not, to this date, filed or served a motion for new trial pursuant to N.C. Gen. Stat. § 1A-1, Rule 59. Instead, Defendants have simply requested this Court to "[permit] a trial by jury to be scheduled[,]" to "direct plaintiff to . . . accept trial by jury[,]" and to "return said litigation to Montgomery County, where it originated[.]" Under North Carolina law, we have no authority to grant that request in the absence of properly-preserved legal errors assigned as error and presented to this Court for decision. For that reason, Defendants' failure to file a timely motion for a new trial pursuant to N.C. Gen. Stat. § 1A-1, Rule 59 or to otherwise establish that they are entitled to relief on appeal precludes this Court from granting relief. In other words, since Defendants have not satisfied the legal prerequisites for obtaining appellate relief, we have no author-

ity to grant the new trial before a Montgomery County jury that they request. As a result, since Defendants did not file a timely motion for a new trial or advance any of the grounds for obtaining a new trial specified in N.C. Gen. Stat. § 1A-1, Rule 59 or otherwise establish adequate grounds for an award of appellate relief, we hold that they are not entitled to have a new trial. *See Trivette,* 162 N.C. App. at 62, 590 S.E.2d at 303.

For the foregoing reasons, we affirm the decision of the trial court.

AFFIRMED.

Judge ELMORE concurs.

Judge STROUD dissents by separate opinion.

Stroud, Judge, dissenting.

Due to defendants' numerous egregious violations of the North Carolina Rules of Appellate Procedure, I would grant plaintiff's motion to dismiss this appeal. I therefore respectfully dissent.

The majority explains the convoluted procedural history of this case, defendants' failure to appear at the trial of this matter and thus to preserve any objections for review, and the many violations of the Rules of Appellate Procedure in the record and in defendants' brief. The deficiencies in the record on appeal are even acknowledged by defendants' statement in the record that

[a]ppellants have not been able to work with the attorney for the appellee in the manner customary for litigants in cases where each side is represented by attorneys. Appellants must presume that appellee's attorney is holding back with the expectation that appellants not trained in the law will not successfully negotiate the procedures that must be mastered. Consequently, this Record of Appeal is not a joint document where areas of agreement and areas of disagreement are well defined.

However, the record also shows no indication that the defendants sought judicial settlement of the record. In short, the majority and I are in agreement that defendants' violations of the Rules of Appellate Procedure are numerous and egregious and that "[d]efendants' appeal satisfies *Dogwood's* criteria for dismissal[.]"

However, the majority then goes on to review several legal arguments which defendants *might* have raised in this appeal. The deficiencies and violations in the record and defendants' brief are so numerous and severe that, in the majority's well-meaning effort to review defendants' appeal on the merits, it has actually created arguments for defendants, including arguments not addressed by either party's brief. The North Carolina Supreme Court set forth the proper analysis for failure to comply with the appellate rules in *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 657 S.E.2d 361 (2008).

The most egregious violations result in waiver of the appeal and these "arise[ ] out of a party's failure to properly preserve an issue for appellate review." *Id.* at 194-95, 657 S.E.2d at 363. "[A] party's failure to properly preserve an issue for appellate review ordinarily justifies the appellate court's refusal to consider the issue on appeal." *Id.* at 195-96, 657 S.E.2d at 364 (citations omitted).

Here, defendants failed to appear or have counsel appear on their behalf at trial, and thus they violated Rule 10(b)(1) which provides, "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make[.]" N.C.R. App. P. 10(b)(1); *see Dogwood Dev. & Mgmt. Co., LLC* at 195, 657 S.E.2d at 363 (citations, quotation marks, ellipses, and brackets omitted) ("The requirement expressed in Rule 10(b) that litigants raise an issue in the trial court before presenting it on appeal goes to the heart of the common law tradition and our adversary system. This Court has repeatedly emphasized that Rule 10(b) prevents unnecessary new trials caused by errors that the trial court could have corrected if brought to its attention at the proper time. Rule 10(b) thus plays an integral role in preserving the efficacy and integrity of the appellate process. We have stressed that Rule 10(b)(1) is not simply a technical rule of procedure but shelters the trial judge from an undue if not impossible burden."). Furthermore, defendants failed to assign error to a single finding of fact or conclusion of law made by the trial court. Findings of fact to which no error is assigned are binding on appeal. *Hartsell v. Hartsell*, 189 N.C. App. 65, 68, 657 S.E.2d 724, 726 (2008). Also, "[t]he appellant must assign error to each conclusion it believes is not supported by the evidence. Failure to do so constitutes an acceptance of the conclusion and a waiver of the right to challenge said conclusion as unsupported by the facts." *Orix Fin. Servs., Inc. v. Raspberry Logging, Inc.*, 190 N.C.

CAROLINA FOREST ASS'N v. WHITE

[198 N.C. App. 1 (2009)]

App. 657, 660, 660 S.E.2d 609, 610-11 (2008) (citations omitted). Due to defendants' failure to appear at trial and preserve any issues for appeal and failure to assign any error to the findings of fact or conclusions of law upon which the judgment is based, I conclude defendants have waived their right to appeal. *See* N.C.R. App. P. 10(a), (b)(1); *Dogwood Dev. & Mgmt. Co., LLC* at 194-96, 657 S.E.2d at 363-64; *Orix Financial* at ——, 660 S.E.2d at 610-11; *Hartsell* at 68, 657 S.E.2d at 726.

Having determined that defendants' have waived their right to appeal, the last inquiry is whether this Court should use Rule 2 to reach the merits of the case. *See Dogwood Dev. Mgmt. Co., LLC* at 196, 657 S.E.2d at 364; *see also* N.C.R. App. P. 2 ("To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.") However, use of Rule 2 is proper only "when necessary to prevent manifest injustice to a party or to expedite decision in the public interest. Rule 2 . . . must be invoked cautiously, and . . . [only] exceptional circumstances . . . allow the appellate courts to take this extraordinary step." *Dogwood Dev. & Mgmt. Co., LLC* at 196, 657 S.E.2d at 364 (citations and quotation marks omitted).

Although I appreciate the difficulties defendants may have had in representing themselves, the fact that defendants are *pro se* is not an "exceptional circumstance" which would justify use of Rule 2. *Bledsoe v. County of Wilkes*, 135 N.C. App. 124, 125, 519 S.E.2d 316, 317 (1999). ("[The Rules of Appellate Procedure] apply to everyone— whether acting *pro se* or being represented by all of the five largest law firms in the state.") Furthermore, there is nothing in the record which would indicate that this case presents any "exceptional circumstance" for which Rule 2 should be invoked "to prevent manifest injustice or to expedite decision in the public interest." *Dogwood Dev. & Mgmt. Co., LLC* at 196, 657 S.E.2d at 364. "The Rules of Appellate Procedure are mandatory; failure to comply with these rules subjects an appeal to dismissal." *Bledsoe* at 125, 519 S.E.2d at 317 (citation omitted). I therefore respectfully dissent and would grant plaintiff's motion to dismiss this appeal.